Here is the next case on the calendar, United States v. Frankel. Good morning, Your Honor. My name is Peter Tomeo, and I represent the appellant Ephraim Frankel. This is a case in which a crooked businessman named Mark Stern concocted a scheme to obtain a $126 million loan from Citigroup to purchase a portfolio of shopping centers. And when that loan went bad, left Ephraim Frankel liable for $70 million in restitution. Did Mark Stern plead to this case? Did he become a government witness? Your Honor, apparently so, but we don't actually know that. Because his case, as of, I didn't look yesterday, but I looked on Friday, you cannot find his name or the docket number of his case in PESA. It is sealed and sealed beyond that. Maybe the government will enlighten us. Mr. Stern became a witness. Did he play any role? Did he testify in this trial? No, he did not. His cooperation, this is all public because it's been in other cases, had to do with these various corruption cases against New York elected officials. Which is all well and good, and certainly he's entitled to whatever benefit he got in terms of sentencing. But your guy is left holding the bag for this particular fraud. Exactly. And we don't know to this day if he paid a penny or if he paid $70 million to make this restitution good. And my client is left. You don't dispute, do you, that your client had fraudulent intent? To the extent that he published and provided false documents, certainly that was fraudulent. But in terms of whether it was his purpose to defraud Citigroup out of $126 million, that was the issue. So what are the elements of the crime that Citigroup's alleged negligence negate? Well, Your Honor, it goes to the materiality of the statements involving the deposit. Because the argument at trial was that those statements did not affect Citigroup's decision in terms of issuing this loan. The loan was issued on other bases, particularly the loan-to-value ratio, and more significantly, the participation of this businessman named Joshua Safran, who turned out not to be participating in his signature. But that doesn't go to the negligence, does it? That goes to whether the standard that the jury was advised about how to decide materiality, right? Yes, Your Honor, and that's part of our appeal. Because as far as negligence goes, suppose Citibank had conducted due diligence, detected the fraud, and not made the loan, your client would still be guilty of mail fraud, wouldn't he? Because he conceived or participated in this scheme, made false statements, mailed a letter. That's all it takes. Yes, Your Honor, but the issue here was the materiality to the loan itself, not the $126 million loan. And that was what we were arguing at the trial, that the statements having to do with the amount of deposit, while false, were not material to the issuance of the loan. And that was what we were attempting to get through. Now, I know the argument that was made by trial counsel was caged in the concept of negligence, but, in fact, it was broader than that in terms of what he asked for in the jury instruction. Really, it's saying they weren't negligent, they just didn't actually care. Exactly, it went to the materiality of it. How many lawsuits pending against the law firms? Your Honor, apparently, the status of those is not clear. I know that there were lawsuits that were pending for a while, and some of them have been resolved with some summary judgment orders. The exact amount that was recouped from that is unclear in whether Citigroup made concessions in terms of what their actual loss was. One of the interesting things about this case is that Citigroup never came forward to talk about its loss. Citigroup never provided a victim impact statement that I've seen in the record. Did you offer an alternative loss figure? Your Honor, the counsel at sentencing did ask that the court note that the amount was less than $70 million. There was a question as to how much it was. I thought that the trial counsel had withdrawn his request for a Fatico hearing. He did, Your Honor. He did, Your Honor. I don't believe, however, that On the loss amount. Yes, Your Honor, there was language that was, at the time, it was indicated by the government that there would be something provided in the order which would provide a mechanism for reducing the loss, the restitution order by the loss amount, sorry, by the amount recovered, but that was never added to the order. Counsel, assume that you're, just for the sake of this question, that you're not successful on this appeal. When will Mr. Franco pay off the $70 million? Your Honor, I would assume never. I would doubt that Mr. Franco, as a middle-aged man with a criminal conviction, having lost his attorney's license, where's he going to get $70 million from? I think there's other people and institutions and firms that are involved in this lawsuit that may, in fact, be able to come up with $70 million. Is it joint and several? It's joint and several, but joint and several with whom? The order says this is joint and several. It doesn't articulate with whom. It doesn't articulate, is it joint and several with Mr. Stern? Is it joint and several with these law firms? Is it joint and several with other individuals who participated in the transaction and may have some liability? Doesn't it suggest that the Citigroup isn't entitled to recover from your client where it has recovered from already from others? Well, certainly it would be, and we've cited the case law is clear on that, and the government's conceded that they're not entitled to get dual recovery. What we're concerned about, and the practical effect in the real world of this, is Mr. Stern, if we're not successful in terms of the conviction, when he's released from prison in 2019 and he attempts to start his life, is he going to be saddled with a restitution order of $70 million, which will in fact mean that he won't be able to start his life? I am, of course, well aware of the impact that that has. I would certainly, I fully appreciate the difficulty that people labor under when they have these essentially meaningless restitution orders, meaningless in the sense that nobody's ever going to get that money, but still it's a judgment against him and it will impair his ability to get credit and so on. So that's a serious problem. But if other people do pay the money, isn't there a mechanism by which he can go to court and get credit for it? If he's notified of it, what obligation does Citigroup have to notify him? There is no obligation. Do they have an obligation to notify him? I don't see how. I mean, do I think ethically they do, and do I think if Mr. Denver was to find out, I'm sure he would tell somebody, but there is no mechanism beyond that for an assurance. And the fact that the lack of the participation of Citigroup in this case . . . Well, is there . . . so what relief . . . I understand your argument's going to the conviction. That's a separate issue. Yes, thank you. You want reversal. But on this front, what relief are you actually asking us to provide? If we send this back and tell the district judge, you should do something else about restitution. Because I take it you don't really contest that, unfortunate as it may be, unfair in some ways as it may be. Mr. Frankel is on the hook for the full amount of the restitution, or could be anyway, if the judge thinks he should be. You're really asking us to provide something, and I'm not sure what, as relief to make sure he gets credit if there are other people who have paid. I'm not asking the court to send this back with precise instructions to the judge. I think that the practical way of doing it would be to remand it for resentencing on the issue of the order of restitution. Then, to have the government . . . at that point, I would assume the district judge, and if I was counsel, I would ask the district judge to have the government come forward to provide some information as to what money has been recouped. Because there might be credits that he's already entitled to, because either Mr. Stern or the banks, the law firms in these litigations might have paid money. Yes, and indeed we may find out, and I'm speculating, but I'd want to find out, did Citigroup in fact make concessions in the settlement? Did they in fact say, well, we really can't prove we lost $70 million. We really now . . . That wasn't part of this case? That was not at all part of this case. It was indicated, and Judge Lynch is correct, Judge Pooler, that the trial counsel did not pursue the fatical hearing, but there was discussion where it was left and said, we're going to have this order entered in the full amount on the understanding that there will be some sort of a mechanism. That mechanism doesn't exist in the order. The order simply says, Mr. Franco owes $70 million to Citigroup, and it's joint in several, but without any mechanism. And I think that's . . . He was tried just by himself? There were no other defendants in this case? I'm sorry, Your Honor? I said he was tried just by himself? He was just tried by himself, Your Honor. Thanks. And in fact, I think he was indicted by himself as well. There's no . . . It was clear at the trial that Mr. Stern was an unnamed co-conspirator, but beyond that, there was no one else on trial who was charged. Thank you. Thank you, Your Honor. Mr. Denver. May it please the Court? My name is Andrew Denver. I'm an assistant United States attorney in the Southern District of New York. Could you address the concerns about the mechanisms? Your Honor, there is no mechanism, because there's no mechanism in the law. If one looks at Section 3664 of the restitution statute, any of the other restitution statutes, there's nothing there. Congress hasn't given us any guidance or any mechanism for this, for reducing restitution when a co-defendant pays off restitution, or in the case here, where there is certainly some indication in the record that law firms representing Mr. Stern and his companies had been sued by Citigroup, and apparently . . . And some of those are still pending, aren't they, the lawsuits? I'm not clear on that, Your Honor. I don't know that for a fact. Well, shouldn't someone be charged with informing Mr. Frankel if and when a portion of this amount is paid back? Well, Your Honor, when I think . . . An informal mechanism, I think, that does exist is the fact that when Mr. Frankel finishes his sentence of imprisonment, he will be placed on three years of supervised release. And the Probation Department, which among other responsibilities with respect to Mr. And certainly, they will be in the position, they're an arm of the court, to contact Citigroup and determine what, if any, additional civil settlements related to this conduct in this case, Citigroup was paid off of, paid for, that would credit the amount of restitution. Meanwhile, Mr. Frankel is going to be paying a portion of whatever income he can make forever. Can we agree on that? That may very well be the case, Your Honor, yes. And as Judge Lynch pointed out, it will limit his access to credit and employment because he has this judgment pending. Isn't that correct, too? That's certainly correct, Your Honor. What's up with Mr. Stern? Mr. Stern, Your Honor, has not been sentenced yet. What has he been convicted of? He's been convicted of many crimes, Your Honor, including . . . and he's pled guilty. He's pled guilty to many crimes, including the conduct of crimes in this particular case. But this is just one of his storied life. Correct, Your Honor. And he was convicted of embezzling this amount, of stealing this amount from Citibank? Essentially, the same charges that Mr. Frankel was charged with, he was charged with as well, Your Honor. And does he have a restitution order? Oh, well, he hasn't been sentenced yet. He hasn't been sentenced, Your Honor. Is the government asking for a restitution order against Mr. Stern? I'm sure there will be a restitution order in his case, Your Honor. What other crimes has he been . . . has he pled to or been convicted of? Similar type crimes, Your Honor, crimes of fraud. I don't have the full list, Your Honor, but he's engaged in other fraudulent conduct in the past. Did he give the government evidence in this case against Mr. Frankel? I think the answer to that question is no, Your Honor. Well, he certainly didn't testify at trial, Your Honor. The government's evidence that was presented at trial was derived from, largely, Your Honor, from documentation that was provided to the Citigroup by Mr. Frankel. So, without whitewashing Mr. Frankel's behavior—he, after all, was a licensed attorney at the time he prepared false documents— he looks like someone who was left holding the bag. Well, Your Honor, when a defendant participates in a major fraud scheme that results in the kind of loss that Citigroup suffered in this case, yes, he's responsible for . . . for all the bad paper, right? Well, he's got a—there's a forfeiture order against Mr. Frankel for $50,000 for the amount of money Mr. . . . That was his fee. That was the fee he was paid by Mr. Sterk. All of this. That's correct. And now he has a restitution order of $70 million. Does it seem proportionate? Well, based on his conduct, Your Honor, and we take quite a great deal of issue with what really . . . The most fraudulent conduct engaged in this scheme was conducted by Mr. Frankel, not by Mr. Sterk. Now, obviously, it was done on behalf of Mr. Sterk. He's the one who obtained the loan. There's no question about that. But the numerous lies and misrepresentations, far more of them were made by Mr. Frankel. Mr. Frankel was the enabler of this large fraud scheme. He was the—I wouldn't say—he was the most active participant in deceiving Citigroup into loaning Mr. Stern and his company $126 million. Yes, absolutely. His lies about fraudulent closing costs, his lies about holding $26 million in escrow, his lies about paying the phony closing costs, which were over $15 million, that's all coming directly from Mr. Frankel himself. Now, obviously, he was doing it on behalf of Mr. Stern. By himself? You mean he wasn't told by Mr. Stern what to do and how to do it? Well, I'm not saying he wasn't told. He clearly knew the false representations he was directly making to Citigroup. He executed these false statements, and as the escrow agent, his participation in this scheme was a requisite. Now, of course, somebody else could have been enlisted for that role. I suppose there are other corrupt people out there who might have done it. But he was the guy who had to make these representations or the loan wouldn't have gone. Absolutely, Your Honor. There are a lot of cases where restitution obligations fall unevenly, where there is a crook who orchestrates a scheme, but because he's a crook he's never going to have any money that is visible, and some other person who's a cog but may have assets or may someday have a real job winds up holding some part of that bag. But that's one problem that exists with restitution pervasively. In this case, there's another problem that I've not necessarily seen before, because in a lot of those cases there isn't anybody out there who is really going to be paying, except perhaps somebody who will have to pay off a few dollars for the rest of their life. But here there's a separate problem, which is this lack of a mechanism for keeping track, apparently, of what the loss actually is. And it is somewhat troubling. Now, maybe it's the defense's own fault that they didn't press harder to get some of this information about what may already have happened at the FATICO hearing. And maybe that's the answer. I don't know. But you're saying the only mechanism you've been able to come up with is at some point when he gets on probation, the probation department will check to see what he really still owes. I think you're right. The burden falls on Mr. Frankel, and with the aid of the probation department they can certainly determine. And for as long as he's in prison, whatever meager prison earnings he has, he's not going to be able to buy a bar of soap in the commissary because it's all going to be confiscated, even if, hypothetically at least, it's possible that some combination of the law firms and Mr. Stern have reimbursed Citibank fully. Your Honor, I don't believe anybody believes there's any evidence that even those law firms will have compensated C Group completely. Do you know if it's in a manual? Or, in other words, what you describe as likely to happen, where the probation people will be checking. Is there some sort of procedure, something written down? Or are you talking about what you would do if you were involved? Your Honor, I'm not aware of any set procedures the probation department has to deal with this kind of situation. I saw the gap in what is, because I had this in another one of my own cases, where you had a large restitution amount and there was, similar to this case, there was some related civil litigation that resulted in, which should result in a reduction in the restitution amount. And I realized at that point, even while preparing for this argument, that there is no actual mechanism involved. I checked with our financial litigation unit, in fact, to determine whether the district court has a mechanism for this. And I'm told there isn't. If the district court had a mechanism, it didn't exercise it in this case. Well, it hasn't been given the chance to at this point, Your Honor. He sentenced Mr. Frankel and ordered $70 million in restitution. Didn't he have the opportunity to do anything then? Mr. Frankel? No, the district court. Well, the district court was left with just basically some basic facts. You said the only mechanism would be in the district court. And the district court has already done its job. Well, no, I'm referencing actually the clerk's office of the district court, which I think keeps, which oftentimes restitution payments are made to. If restitution payments were made to the district court, for example, by a co-defendant, then that would be tracked. Correct. But if something like an analogous to restitution, something that happens in an independent civil litigation, nobody is in charge of watching for that. Correct. Right. So there are two possibilities I take it temporarily. One is there was already some settlement and there was some allusion by defense counsel to that possibility that maybe should have reduced this liability. And your position on that is that's Mr. Frankel's problem. He should have pursued that at the hearing, and he abandoned that issue. And then secondly, there's a possibility that even if there were no such settlements, there might be in the future, but there's no mechanism for figuring that out unless Mr. Frankel somehow finds out on his own and proceeds through the procedure in the MVRA to come back and ask the district court to credit him for that. If he doesn't find out, nobody is keeping track. As far as I know, Your Honor, there is no mechanism to keep track of that. But doesn't this award make the government look foolish? $70 million against a single person. Not a business. A fraudster, no doubt. Convicted of fraud. He'll never pay it off. What does the government, doesn't the government look foolish? No, Your Honor. The restitution, the judge determined restitution based on the facts before the judge. There was $126 million in loans made. It was reduced once the properties which were purchased with those loans were sold. It was reduced, the city group got back $66 million from the sale of those 11 properties. What was resulting, what was left was the $70 million and lost as city group suffered. And Mr. Frankel could someday hit the Powerball. That can happen. Yes. Thank you. Thank you. Back to you, Your Honor. Your Honor, as I'm going to use my time to address this restitution issue, although I do take exception to the materiality and whether or not the amount that was being put forward for the closing costs were material to the issuance of the loan, they were designed to make sure that the borrower could close on the loan, and the Powerball was able to close on the loan. But in terms of a couple of points that the prosecutor brought up, number one, the district court has the inherent authority to structure the restitution order. They can make it joint in several. They can make all these provisions. And, in fact, I've litigated that just recently with Judge Azraq, and she issued a very complicated restitution order just because, in that case, we were dealing with real money. Counsel didn't ask for the Fatico hearing that he was entitled to. Yes, but he did ask that there be a mechanism put in place. I mean, that was the issue they discussed with the judge at the sentencing, and they said, look, there's going to be a means to making this order make sense, and that wasn't done. Now, could counsel . . . What is that mechanism? You know, maybe the district court could go back and redo what the district court wasn't asked to do before and find out what amounts have been paid. But suppose these cases are pending. What kind of . . . What provision should there be in the district court's order to require whom to figure out whether Citibank is winning cases against various miscellaneous people? Well, I think, Your Honor, as Citigroup, as being the beneficiary of the order, could have an obligation to come forward and disclose this to the clerk's office. Well, they might if they were in a . . . But they're not a party to the criminal case. They might, if they sought to register this judgment against Mr. Frankel, which I take it is their right, and tried to enforce it against him, then there would be litigation in which Mr. Frankel could say, wait a minute, I understand they've already been paid all this money by somebody else, and that would work itself out in discovery. But if that's the obligation, why would they ever . . . If they got paid off, what incentive would they ever have to register this judgment? They wouldn't. They wouldn't, and he'd be left with the . . . But what I'm saying is they're not a party to the criminal case, so what right does the court have to impose obligations on Citibank to make periodic reports? They're not even represented here. Well, Your Honor, I think the court would have, in terms of its inherent authority, could bring Citibank in for that purpose because they are the beneficiary of the order. The order provides that the clerk shall collect and pay over to Citigroup $70 million. So they do have a role in this. Now, if they're in a position where they want to disavow this for whatever internal reasons they may have, then that's all well and good, and then there shouldn't be a restitution order. The government's collecting this money. The court system is collecting this money on behalf of Citigroup, not on behalf of the public interest. Since Mr. Stern hasn't been sentenced yet, as we are informed, there might be a restitution order against him as well, and he might have the funds to pay some of that. Well, I think at a minimum, Your Honor, the order ought to indicate that the government has an obligation to come forward. I mean, Mr. Stern, I'm sorry, Mr. Franco cannot even today go to PACER and find out whether a judgment has been entered. And the docket number came out in one of the civil cases. So we know the docket number pending, but that docket number is, if you put it into PACER, you get a report, there's no such docket. There's no information on it. This is a very pernicious thing that's going on. This is not a danger. There's no danger to Mr. Stern's life that's been discussed. They just didn't want to come out because it was a highly political situation. You know, this is certainly, it could be. Mr. Franco, or for that matter, the New York Times, if they were interested, could file an application in the district court to unseal that docket. That would be a possible remedy. Presumably, though, if he hasn't been, the one thing we do know about the case is that Mr. Stern has not been sentenced. So I don't think there'd be anything in the docket at this moment. Maybe there will be later. And the only reason we know that is because the prosecutor was good enough to tell us. I'm told by Mr. Dember that Mr. Stern was pled to this very offense as well, the one on which Mr. Franco was convicted. I only know that because Mr. Dember said that. Right. We all heard it at the same time. Right. And therefore, what might be associated with that plea is a restitution order. Right. But even in the PSR, there's an indication there's no co-defendants. There's no mechanism at all here. And the idea that a probation officer enforcing supervised release is going to research this, that's not going to happen. I mean, I've been through this. What happens is the probation officer is making sure that Mr. Franco is paying whatever he can afford to pay towards the restitution order. But they're just going to look in the clerk's order to see what's filed. What he can afford to pay for the rest of his life. For the rest of his life. And right now he's paying, came up $25 a quarter unless he's working for Unicor until he's released. So he's not taking every penny away. He can buy a toothbrush or a bar of soap. But the point is that I think it would be a relatively straightforward matter if this case was remanded to the judge for instructions to make it clear how other contributions are to be accounted for in the restitution order. I can imagine if the government isn't prepared to come forward with it, a very simple application that can be made to the district court to obtain this information. And I think it's within the inherent power of the court to make it a condition to the entry of this order for the benefit of Citigroup. That Citigroup agree simply to report if it collects any money in connection with this debt. I don't see this as a very complicated or burdensome on any of the players. And the opposite is if you leave this in place, Mr. Sfranco is going to be saddled with a $70 million judgment for the rest of his life. Because unless we, he's never going to pay it off. And unless it's paid off by some other means. And the unusual thing in this case is that all that's going to happen is he's going to wind up with something like a $20 million restitution order that will hang over him for the rest of his life. But at least hypothetically, I think you're right. It's altogether, it's a potential reality that somebody could pay the whole thing and then he'd have this order unnecessarily. I agree. Or they could have, and I think it'd be interesting to find out. I certainly, if I was representing him on remand, I'd want to find out, you know, if Citigroup did collect $40 million, on what terms did they collect it? Did they make a concession? Did they concede that in fact? I take it. But it may be that there's nothing in there. But who knows? I think we need to know. I take it, and I just want to ask Mr. Denver this. You have no objection to the kind of mechanism that your adversary outlined? Because you yourself were talking about how what you would expect would happen is that the probation department would monitor and report. So it seems that you're actually quite close in terms of how you think a mechanism should work. Well, if Congress created such a mechanism or the court in its rules created such a mechanism, there'd be no difficulty. The bottom line here is that in terms of Judge Bramant's restitution order, he's done nothing wrong. There's no error in his order. So there's no basis for returning it to the district court because he's committed no error in the restitution order he ordered in this case. Now, you know, whether there is — because there's a gap here, obviously, in a situation like this where you have civil litigation that's related to a criminal case. You've proposed a way to remedy that gap. Well, I'm just suggesting — I'm not — I guess maybe it's a suggestion. It's more of a hopefully Mr. Frank will have the right, I would think, in a civil context to bring a city group into court to get an accounting as to how much they're still owed. I suggested that once he's on supervised release, working with his probation officer, his probation officer could certainly make the inquiry of city group, since probation is responsible for supervising his restitution payments. These are suggestions. I don't think it would be appropriate for this court to then direct — return this case to the district court to institute a mechanism that doesn't exist in the law or the rules. Besides the legal issue of what authority we might have, and we might be able to get over that, there's a factual issue also, isn't there, that this is all speculation. In other words, there's no evidence in the record before the district court that Citibank was paid a penny. There is a reasonable speculation, I suppose, that someday they're going to be paid a penny, and that gives us — by somebody, Stern or somebody else, and that gives us an interesting question about how Mr. Frank would ever find out about that or what mechanisms there are, et cetera. But at this moment, we're just speculating about this, as one could in any case speculate about the possibility that some third party might be in a position or might be required someday to pay some money that should get credited. That's absolutely clear, Your Honor, because, you know, at the sentencing proceeding, Frankel represented to Judge Rahman that he — and this is the word he used — I think there has been a settlement, and he threw out a $40 million figure, and that may actually be true, may not be true, but it was just his thoughts. He offered absolutely no evidence of it, and even if there had been, and maybe even if there is a settlement, there's absolutely no evidence whatsoever that if there was a settlement, that any payments had been made to this point. So this is — I thought the deduction from the $126 million was what they recovered from the sale of the properties that the $126 million was used to purchase. It was — But that's not a settlement. No, no, that's completely different, Your Honor. So there may also be a settlement. We don't know. There's nothing in the record to establish that. The Citigroup — Citigroup sold the properties, foreclosed on those properties, because it was owed $126 million. They got $56 million in the sale of those 11 properties. Therefore, the restitution amount was reduced, according to the way restitution is, credited by — to reduce it to $70 million. That's where we're at, to $70 million. Now, if there's a — Is there actual evidence in this record even, although it maybe exists somewhere in the world, is there any evidence in this record that Citibank actually sued these law firms? Or is that also just the lawyer saying, I think this is what happened? There's nothing in this trial record of this case at all that actually happened, not that I'm aware of, Your Honor. There's nothing in the record that actually happened. And I think, in all fairness, when one looks at the sentencing transcript and the representations by my trial partner, I think we're under the impression there may have been such a settlement. But there's absolutely no evidence of it, and again, no evidence that actual payments were ever made under that so-called or supposed settlement. Thank you. Thank you both. Yes, go ahead. I'm not going to abuse it, Your Honor. Just my — in terms of an error, I think that there is an error in the order. The order says joint and several without indicating who it's joint and several with. I think that is erroneous. I think the way the statute reads is it does permit the court to make a joint and several, but it has to be joint and several with someone else. Well, suppose it was made joint and several with Mr. Stern. Is there any way to make it joint? There's no way to make it joint and several with Citibank or a law firm, miscellaneous law firms that Citibank might have sued. They're not. No, but there was a discussion, as I said, in the record of putting a mechanism in the order, and that wasn't effectively done. And, you know, it's one of these kind of vague things in the Federal Rules of Criminal Procedure. Is that really a provision for going back and once the judge announces the sentence and then he puts it into writing, there's no formal mechanism for going back and saying, Judge, would you redo the document, other than to argue it's wrong on appeal? This is the mechanism. I would say to do that, that the order the judge did in announcing the order indicate he was going to put a mechanism in place, and there isn't one. So I think that's what we would like. Thank you very much for your patience. Thank you. Thank you both for your arguments. The court will reserve decision.